**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TERRY S. DONNELL,**

        **Plaintiff,**

**v.**                                      **Case No.  8:11-cv-2718-T-33TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

      The Plaintiff seeks judicial review of the denial of her claim for Social Security

disability benefits and Supplemental Security Income payments.  Because the decision of the

Commissioner of the United States Social Security Administration is in accordance with the

correct legal standards and is otherwise supported by substantial evidence, I recommend that it

be affirmed.

**A.**

      Plaintiff was fifty-three (53) years of age at the time of her administrative hearing in

September 2010.  She stands 5' 4" tall and weighed 145 pounds.  Plaintiff has a high school

education.  Her past relevant work was as a warehouse worker.  Plaintiff applied for disability

benefits and Supplemental Security Income in July 2008, alleging disability as of June 1,

2008, by reason of depression, anxiety, allergies, asthma, memory loss, loss of balance, loss of

concentration, blurred vision and problems with bowels/digestion.  Plaintiff's applications

were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") on September 13, 2010.  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ**.**

In essence, Plaintiff claims she is unable to work because she has poor equilibrium, breathing problems, problems working under stress, and has irritable bowels and needs to use the restroom frequently.  Plaintiff last worked in June 2008.  During that month, she went to the hospital because she suffered stress and anxiety, and had stomach and breathing problems.  She was subsequently "Baker Acted" and remained in the hospital for nine days.  At her last job, she had a doctor's note to permit her to use the restroom as needed.  Medicine for her irritable bowels and her mental issues contribute to her need to frequently urinate.  She suffers chronic obstructive pulmonary disease (COPD), emphysema, and asthma, and needs to sit down often.  She uses Advair which helps some.  When she has insurance, she has received psychiatric care because she gets stressed, feels pressure, gets upset, and shakes.  She is fearful of driving in traffic.  Due to a past robbery, she doubts she could work around money or at a security monitor job.  She cannot work under time frames or under production.  She is allergic to grass and mold, which she takes medicine for.

Plaintiff estimated she could walk for about fifteen minutes and then would need to sit.  She can sit through half-hour news shows, but usually she reclines or lays down.  She lies down six to seven times a day.  She cannot sleep through the night and is up five to six times to use the bathroom.  She can lift a gallon of milk, but lifting more causes her to lose balance.

2

On a daily basis, Plaintiff fixes her meals, cares for herself, washes clothes, watches television and walks a little.

When asked hypothetically whether she could work at light exertional work with a number of accommodations to account for her subjective complaints, she indicated that she would still have problems with transportation, the need for bathroom breaks, and need time for her doctor appointments.  (R. 31-50).

The ALJ next took testimony from Joyce Courtright, a vocational expert (VE). Initially, she testified that if Plaintiff's testimony were fully credited, Plaintiff could not perform any competitive employment.  On a hypothetical assuming a person of Plaintiff's age, education and work experience, limited to a restricted range of light work, with both environmental, hazard and postural limitations, and with moderate concentration and socialization deficits precluding complex and detailed job tasks, but permitting simple, routine, repetitive tasks embraced by unskilled and the lowest semi-skilled occupational base, as well as precluding all jobs other than those classified as low stress, meaning no public contact and avoidance of stringent and production goals or time targets, the VE opined that Plaintiff could not perform her past work but could do jobs in assembly, wrapping and packing, and verifying recording.  These jobs would tolerate absenteeism at one day per month.  If such person could not maintain concentration and attention on work tasks for fifty out of sixty minutes, then there was no work available.  (R. 50-54).

Also before the ALJ were medical records outlining the Plaintiff's medical and mental health history.  These matters are addressed herein as necessary.

3

By his decision of October 19, 2010, the ALJ determined that while Plaintiff has severe impairments related to allergic rhinitis, anxiety disorder, bronchial asthma, COPD, irritable bowel syndrome (IBS), major depressive disorder, personality disorder, psychotic disorder, PTSD, and urinary incontinence, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work.  Upon the finding and testimony of the VE, the ALJ concluded that Plaintiff could not perform her past work, but could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 12-23).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

In order to prevail on a claim for Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises four claims contending that: (1) the ALJ erred in his credibility finding and in discounting Plaintiff's subjective complaints; (2) the ALJ erred by failing to accord treating and examining sources substantial weight; (3) the ALJ erred in his RFC assessment; and (4) the ALJ erred by engaging in "sit and squirm" jurisprudence.

At the outset I am obliged to note that Plaintiff's brief is borderline acceptable under the Court's scheduling order which directs that the Plaintiff

> must identify with particularity the discrete grounds upon which the administrative decision is being challenged. Moreover, all discrete challenges must be supported by specific citation to the pages of the record relied upon when discussing the pertinent facts, medical evidence, and opinion evidence and by citation to governing legal authority that supports each challenge. Any contention for which these requirements are not met is subject to being disregarded for insufficient development and denied without further consideration. *See Outlaw v. Barnhart*, No. 05-15996, 2006 WL 2640223, at *2 n.3 (11th Cir. 2006) (providing that issue waived where claimant failed to elaborate on claim or provide citation to authority); *NLRB. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

(Doc. 12 at 1-2).  Here, apart from a brief reference to notes from Dr. Vijapura, there are no other citations to or discussion of the medical evidence in this case.  *See* (Doc. 13).  While I do not find any claim waived, counsel is reminded that boilerplate arguments made on claims necessarily dependent on the medical evidence do not well serve the client.

As presented, Plaintiff's first three claims depend upon the opinion evidence of Dr. Ashit Vijapura, M.D.  In a treating source statement dated August 8, 2008, Dr. Vijapura opined that Plaintiff was "frequently unable" to maintain attention and concentration; complete a normal workday without interruption from psychologically related symptoms and

6

to perform at a consistent pace without a reasonable number of interruptions and rest periods; and perform within a schedule and/or maintain regular attendance.[1]  (R. 400).  On that day, he assessed her with a GAF of 35-40.[2]  On her first claim, the Plaintiff notes that while the ALJ found that she suffered medically determinable impairments which reasonably could account for her symptoms, he nonetheless discounted her testimony concerning intensity, persistence and limiting effects as not credible.  She urges that the ALJ failed to examine the intensity, persistence and limiting effects of her pain and symptoms and employed "boilerplate" reasons for discounting them which  are unsupported by substantial evidence and contrary to the report of Dr. Vijapura.  By Plaintiff's second claim, she first asserts that there is no medical evidence that refutes the findings of the (unspecified) treating doctors.  Next, she broadly claims that despite the fact that the ALJ was presented with numerous (unspecified) medical exhibits and opinions, the ALJ consistently discounted those in conflict with the ALJ's own opinion.  Finally, she argues that the ALJ gave "little weight" to Dr. Vijapura and substituted in his own opinion.  By Plaintiff's third claim, the ALJ erred in assessing her residual functional capacity (RFC) by failing to include the proper limitation for her inability to maintain attention and concentration for an extended period during an eight-hour day and her

---

[1]The form defined "frequently" as one-third to two-thirds of the workday.  (R. 400).

[2]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV) . . . .  A GAF of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.*

need to miss work more than five days per month due to her combination of impairments as opined by Dr. Vijapura.

In response to the first claim, the Commissioner argues that the ALJ applied the applicable standard and properly discounted Plaintiff's subjective complaints based on the lack of medical support, findings by doctors that Plaintiff exaggerated her symptoms, her own inconsistent reporting, and the fact that she received unemployment compensation benefits certifying she was ready, willing and able to work.  As for the second claim, the Commissioner argues that the ALJ had good cause to give Dr. Vijapura's opinion little weight because the doctor did not have a treating relationship with Plaintiff and did not provide an explanation in support of the opinion.  Moreover, Dr. Vijapura's opinion was inconsistent with his own notes and the medical evidence and opinions from Drs. Alberts, Carpenter, and Hamlin.  As for the RFC finding, the Commissioner responds that the decision reflects the ALJ's consideration of Plaintiff's concentration deficits and included a limitation for such in his RFC finding; moreover the assessment was supported by substantial evidence.  As for missing work five days a month, the ALJ appropriately left such a limitation out of the RFC finding on his conclusion that the opinion of Dr. Vijapura merited little weight.  Again, the Commissioner urges that in reaching the RFC finding, the ALJ relied on the medical record and opinions of Drs. Alberts, Carpenter, and Hamlin which fully support the ALJ's assessment of limitations in concentration and attention.

Starting with the ALJ's handling of the opinion evidence from Dr. Vijapura, after review of the whole of the medical record, I find that the ALJ's reasons for discounting the opinions of this doctor are supported by substantial evidence.

8

Initially, I disagree with the Commissioner's contention that Dr. Vijapura had no treating relationship with Plaintiff.  Here, the records indicate that Plaintiff was hospitalized in June 2008 and placed under the care of this doctor.  It appears that five days later she was discharged to Dr. Vijapura's care and had monthly office visits in July, August, and early September.  (R. 274-83, 379-80).  It is unclear who in this doctor's office Plaintiff met with in her follow-up visits (R. 279-80), but the care appears to have been under Dr. Vijapura's supervision.  His care appears to have ended in September 2008.  While this record does not reflect the closest of treating relationships, I think it appropriate to conclude that Dr. Vijapura was a treating doctor.

In this Circuit, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  *Lewis*, 125 F.3d at 1440.  Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  Thus, absent good cause to discount this doctor's opinion, such is entitled to substantial weight.  Here, when the whole of the decision is considered in light of the medical record, the ALJ has stated adequate good cause to discount Dr. Vijapura's opinion testimony.

9

As the decision reflects, the ALJ gave "little weight" to Dr. Vijapura's opinion evidence in favor of the reports from other examining and treating doctors.  In addressing the opinion evidence on Plaintiff's mental health, the ALJ specifically noted,

> The undersigned has carefully considered the opinion of Dr. Vijapura at exhibit 13F. While recognizing that Dr. Vijapura had previously treated the claimant, it is questionable whether Dr. Vijapura is a treating source as he had only begun treating the claimant in June 2008, two months prior to the date of the opinion. Moreover, Dr. Vijapura provided no explanations to support his opinion other than restating the claimant's diagnoses and symptoms. Additionally, Dr. Vijapura's credibility is also undermined by his report that the claimant's restrictions had been "in place" since on or before May 9, 2008. However, by May 9, 2008 he had not yet begun treating the claimant. Additionally, the opinion does not appear to be based on any other records. Therefore, little weight is given to the opinion. (Exhibits 10F and l3F).
>
> Great weight is given to the opinions of consultative examiners, Dr. Carpenter and Dr. Alberts. Their opinions are more or less consistent with the overall evidence including the opinion of Dr. Arthur Hamlin Psy.D. referenced below. The assessments of Dr. Carpenter and Dr. Alberts also appear more or less consistent with the claimant's own function report. The claimant reported that she gets along with authority figures and handles changes in work routine, "OK".  Additionally, the claimant reportedly has never been laid off from a job because of problems getting along with other people. The claimant also reportedly reads, watches television, goes shopping, and is able to count changes and pay bills (Exhibits 11E, 11F, l4F, and l5F).
>
> Regarding the state agency consultants' psychological assessments, Dr. Martha Putney, Ph.D. assessed the claimant's mental impairments as non-severe. On reconsideration, Dr. Arthur Hamlin Psy.D. assessed severe impairments with moderate difficulties in the areas of concentration and social functioning. The undersigned is giving the claimant the benefit of the doubt, and giving more weight to Dr. Hamlin considering his assessment of a severe impairment (Exhibits l2F and l5F).

(R.19-20).  Plaintiff criticizes the conclusion regarding Dr. Vijapura because she contends it is contrary to (unspecified) objective evidence in the record and other (unspecified) numerous medical exhibits which reveal she is disabled.  However, as this quoted passage indicates and

as a review of the record reveals, this is simply not the case.  No other treating or examining

doctor made findings or rendered opinions for mental limitations as severe as those proposed

by Dr. Vijapura.[3]  And, as the ALJ further noted, Dr. Vijapura gave no explanation in support

of his opinion apart from repeating his diagnoses, nor any explanation for his basis for finding

the limitations extended to a period of time before he even treated her.  When the whole of the

evidence is considered, the findings of Drs. Alberts and Carpenter related to Plaintiff's

functional capacity and socialization *were* more in line with Plaintiff's own reports than Dr.

Vijapura's were.  Furthermore, the ALJ's consideration of the mental health record and his

explanation for his decision contradict the Plaintiff's contention that the ALJ substituted his

own opinion for that of Dr. Vijapura.

  In these matters, it is for the ALJ to weigh and assess the medical evidence and

opinions and draw conclusions therefrom.  By my consideration, the ALJ has stated adequate

record- based reasons for not fully crediting Dr. Vijapura's opinions and Plaintiff fails to

demonstrate otherwise.

  This conclusion also lays to rest Plaintiff's third claim that the ALJ erred in

determining her RFC.  By this argument, she urges the RFC should have included a limitation

for her inability to maintain attention and concentration for an extended period during an

eight-hour workday and needing to miss more than five days each month because of her

impairments.  With such limitations, no work would be available.  In sole support of this

---

[3]*See* reports of Dr. Fred L. Alberts, Jr., Ph.D., P.A. (R. 381- 84); Dr. Richard A.
Carpenter, Ph. D. (R. 401-04); Dr. Arthur Hamlin, Psy.D. (R. 405-22).  Psychiatrist Sumin
Bhat, who saw Plaintiff after Dr. Vijapura, but not until 2010, gave no similar opinions and
found Plaintiff's insight and judgment were good.  (R. 481-87).

mental RFC, Plaintiff again cites to Dr. Vijapura's opinion.[4]  However, having discounted this

doctor's opinion in light of the lack of supportive findings and rationale and upon review of

the whole of the medical record, there is no error in the failure to include a limitation that

Plaintiff could not maintain attention and concentration up to two-thirds of the workday.

Despite discounting Dr. Vijapura's assessment for frequent limitations in attention

and concentration, the decision reflects that the ALJ credited Plaintiff with significant

limitations related to her concentration and socialization.  Thus, by the ALJ's assessment,

> [s]econdary to moderate difficulties in concentration, complex and detailed
> job tasks are precluded, but the claimant is able to perform simple, routine,
> repetitive tasks embraced by the unskilled and lowest end of the semi-
> skilled occupational base.  Lastly, due to moderate difficulties in
> socialization, all jobs are precluded other than those classified vocationally
> as low stress which are those requiring no public contact and the avoidance
> of stringent production goals or time targets.

(R. 17).  Plaintiff makes no effort to demonstrate that such moderate limitations as assessed

by the ALJ are not supported by substantial evidence.

As for the ALJ's credibility finding, Plaintiff urges that the ALJ failed to consider the

intensity, persistence, and limiting effects of her symptoms and stated only boilerplate reasons

for discounting her pain complaints.  Further, to the extent that he offered reasons for

discounting her subjective complaints, he mischaracterized a portion of her testimony and

otherwise stated reasons which were contradicted by the assessment by Dr. Vijapura.  By my

review, it is apparent that the ALJ actually credited Plaintiff's subjective complaints related to

her mental condition, but not to the extent that she claimed.  Mainly, this was because her

---

[4]I can find no express support for a limitation of missing work five days a month
within any record from Dr. Vijapura.

subjective complaints contradicted the whole of the evidence and the express findings by some medical sources that Plaintiff exaggerated her symptoms. Once again, I conclude that Plaintiff's sole reliance on the assessment by Dr. Vijapura to demonstrate error by the ALJ is unavailing.

In this Circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition, or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

Here, the decision reflects the ALJ's recognition of this standard and the obligation under the standard to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. (R.17). The decision further reflects that the ALJ fairly recited Plaintiff's subjective claims (R. 18) and then gave more than boilerplate reasons for discounting the subjective complaints concerning her mental symptoms, her breathing problems and her

13

frequent need to use the bathroom.  (R. 18-19).  In sum, the ALJ concluded that the symptoms

were not borne out by the medical record.  As for her mental health, the ALJ also noted what

he believed was an unusual response by Plaintiff to a question concerning her ability to work,

noting that Dr. Carpenter reported his suspicion that Plaintiff amplified her symptoms and

over-reported them.[5]  Additionally, he noted that Plaintiff had declined medications for

depression and anxiety shortly before her alleged onset date.  By my consideration, even if the

ALJ's anecdotal observation was an improper consideration, which I do not find, when the

credibility findings are considered in light of the ALJ's review of this record, he has

articulated adequate reasons for discounting her subjective complaints to the extent she

claimed, notwithstanding the assessment by Dr. Vijapura.

By her final claim, Plaintiff accuses the ALJ of engaging in "sit and squirm"

jurisprudence when he noted his observation from the hearing that in response to a question

about her ability to do certain type of work, "claimant alleged that she is afraid of someone

putting a gun in her face, but proceeded to laugh aloud." (R. 18).  The ALJ found "this

behavior highly questionable," thus undermining her credibility.  *Id.*  Citing to case law from

the Sixth Circuit Court of Appeals, Plaintiff urges that the ALJ's personal observation and his

factual conclusion thereon was clear error.

---

[5]As the Commissioner points out in his brief, in addition to Dr. Carpenter, three other
doctors, Dr. Parks, Dr. Smith and Dr. Provencher, noted inconsistencies or exaggeration in
Plaintiff's claimed symptoms.  Dr. Parks indicated that he could not find any abnormalities
and that her symptoms were not consistent with any diagnosis.  (R. 308).  Dr. Smith noted that
her subjective complaints are not consistent with the objective medical findings.  (R. 426).
Dr. Provencher found her affect disproportionate to her symptoms.  (R. 460).  Additionally,
Plaintiff testified that she was receiving unemployment compensation during this period
certifying she was able and willing to work.  (R. 44-45).

14

In response, the Commissioner argues that it is entirely appropriate for an ALJ to consider a claimant's appearance and demeanor in assessing credibility.  In any event, the ALJ did not engage in "sit and squirm" jurisprudence here where he merely noted Plaintiff's demeanor as undermining her credibility.

"Sit and squirm" jurisprudence occurs when "an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing.  If the claimant falls short of the index, the claim is denied." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).  Applying this definition to the facts in this case, the ALJ did not engage in "sit and squirm" jurisprudence.  There is no indication that he arrived at a subjective index of traits by which he assessed Plaintiff's claim.  Rather, he reported on what he found to be a "questionable" response to an inquiry which he believed reflected on Plaintiff's overall credibility.[6]  In this Circuit, it is not inappropriate for the ALJ to observe and comment upon a claimant's demeanor so long as the observation is not offered as the sole basis for discounting the Plaintiff's credibility.  *See Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987) (citing *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  As noted above, in fashioning Plaintiff's RFC, the ALJ here gave considerable credit to Plaintiff's subjective complaints, but not to the extent she alleged.  Here, this anecdotal evidence was not the sole basis for discounting the subjective complaints which chiefly were discounted due to lack of support in the whole of the record.  Again, Plaintiff fails to address this contrary medical evidence and the comments

---

[6]The testimony at issue is found at (R. 41).

15

by examining or treating doctors suggesting that she exaggerated her complaints.  Therefore,

Plaintiff is not entitled to relief on this claim either.

D.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence; thus, I recommend that it be affirmed.  I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to

close the file.

Respectfully submitted this
21st day of November 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a

district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
United States District Judge
Counsel of Record

16